You've reserved five out of fifteen. Thank you very much. So in the previous argument, what we were talking about were formats that had different... they had to be different, because Dina selected different formats. In the appeal that we're now addressing, which has to do with the 120 patent, the 1139 appeal, the claim language is directed to the notion that you have multiple toll-free modes, that is response limits that would receive toll-free calls, and they would receive different numbers, but they would actually go to exactly the same format, and they would have an identity to that format. And the point that I'd like to make... Why would you want to do that? Give me an example of this. There would be multiple 1-800 numbers that would get you to the same format? Exactly. Imagine that you are a nationwide company that wants to run a particular sale on a given device, and yet you'd like to know, without more specifics, where calls are coming from. You could use 1-800 number to cover all the calls that you receive from New York State, another for Virginia, another for California, and based on the information that you get from the calls that came in on each of those 800 numbers, you would understand where geographically you had a larger footprint or impact. Alternatively, you might think about different advertising. You could advertise on television 1-800 number. You could advertise a different number in a newspaper or magazine, and then you could keep track of which advertising media was actually more beneficial to you. That's helpful. In the claim, the claim talks about a first response unit and a second response unit. Referring to the drawings of the 120 patent, what are the units that you're referring to there in the claim? The response units are the ARUs, the audio response units that are disclosed. But this claim talks about the toll-free call mode, so it's only talking about 1-800 numbers, right? Yes, Your Honor. There's only one response unit shown in the drawing figure for an 800-call toll mode. But if you look at Column 4 of the patent, which describes the specification, at line 22 and following, it talks about variations, and it talks about the notion that systems incorporating the principles of the present invention may well incorporate various numbers of audio response units for each calling mode. So, CATS has told, in its specification, we're not limited to a single ARU for our 800 mode. We may have multiple ARUs for our 800 mode, or we may have different combinations of audio response units for different ones of the modes. It's just not explicitly shown in the drawing figure. Okay. Well, then turning to Calabrese, again, I'm having a little difficulty with where are the first and second response units. We have the same difficulty, Your Honor. We can't find the first and second response units in Calabrese. My understanding is that the Board and the Patent Office have taken the position that the single VRU that is described as what would be the hoped-for new concept in Calabrese would incorporate both response units. But there's no showing of anything that's in the VRU whatsoever, let alone showing that there would be separate, distinct first and second response units. And I don't think that the Patent Office position is that, well, the various different VRU applications shown in Figure 2 are all molded together in the second embodiment, and therefore the second embodiment has multiple VRUs. I do not understand that to be their position either. Because I think if that is their position, and we'll find out in a minute, but if that is their position, then, again, it's hard to read the claim on that reference because you have to go back to a single operating format. So it's all got to go back, even if you consider flexible benefits enrollments to be a single format. And just accepting that proposition for the moment, you've got to go through two different VRUs to get there, or two different pieces of a VRU to get there. That's correct, Your Honor. Well, I've teed it up. We'll see what the back office has to say. Thank you very much. The only other point that I would like to try to make in connection with Calabrese at this particular point in time is, I think this is one place where the examiner's use of the AT&T courts construction of format sent him astray. And that is, that particular construction starts with the notion of defining things as a computer program and doesn't start with the notion that we're looking at call flows. And our position is that what Calabrese has really disclosed is a more diverse system. What it has really disclosed is, if I have DNAS, I can now almost go on a function-by-functional basis and have separate call flows for each one of those functions. The second you go down to a separate call flow for each one of those functions, and each of those call flows are governed by a computer program, each of those are different formats. So to go for a dependent change that has its own call flow governed by a computer program would be different than checking a claim status call flow. There's nothing that suggests in Calabrese that those are identical call flows. So therefore, those would be different formats. Let me ask you this. It seems that your key is that the same format is implemented by two distinct response units. That's correct, Your Honor. Okay. Claim 34 depends from Claim 28. It requires the two response unit means are incorporated within a single composite unit. But an independent claim is typically broader than its dependent claim. Claim 28, it seems to me, should be construed to at least encompass an embodiment with a first and second response means in one unit.  I agree with you, Your Honor. I just think that what can't be lost is that they're different units in the same box. That's all that we're talking about with regard to Claim 34. As different, if we want to do it by... We're not erasing the distinction between the first and the second response units by putting them together. We aren't saying we've reduced the first and second response unit to one unit. Both exist in Claim 28. They could exist in geographically diverse places. They could sit immediately adjacent to one another. They could be in the same box. Claim 34 covers the notion that they'd be in the same box, but they'd be different operating response units. Can I ask you, was there any discussion before the Board or the examiner about whether the language here is means plus function language or not? I gather you've all been treating it as though it's not means plus function language. There haven't been any specific arguments based on any sort of means plus function analysis, no. Notwithstanding the use of the term means. That's correct. What indication is there, and maybe it's perfectly clear in the specification, that unit means something physical as opposed to functional? I think that basically it corresponds with the notion that each of those elements in figure, I believe it's figure one, are referred to as audio response units. That's a typical term of art in the voice response configuration. I guess what I'm wondering is you answered Serge Wallach's question about composite units still requires separate units that are being composed, and you insisted that that meant two separate physical things in a larger box. I guess the question is why is unit being used that way as opposed to some functionality that exists to perform this first response unit? First response unit means whatever that function is, and the second, and if the same physical thing can do both of them, then that is in fact two units in a composite unit. I think I have the question. You may be a step ahead of me. I think the term unit flowed from its usefulness in the field to begin with. I think in terms of how the claim language was developed, I hesitate to really kind of hypothesize about the choice of the term unit, but my understanding, if you read Claim 34 in relationship to Claim 28, we still have what amount to be two different structures that have been claimed in Claim 28. And that all that Claim 34 says is we're not eliminating those two structures, we're just bringing them together. And I think that that's, I apologize if I did not agree. Are you referring to something that might have some just overlapping components, but there are some components that give different functionality so that you've got two units even though they're on the same circuit, the same board? I think that there's, I'd have to really give a little bit more consideration to how fine a line it is that we would draw as between how separate the units would have to be. But there has to be some difference between the two processing units. There has to be some element of the first response unit that is not being utilized in the second response unit. But the board didn't make any fact findings on this, did it? No, it did not. We're a little bit in the dark here as to what it is we're talking about. I mean, we're reviewing the decision of the board, and the first question in my mind, which is why I started asking the questions that I was asking before, is that it's difficult to discern what exactly it is that we're reviewing. Because there aren't fact findings that identify in the patent in suit what the first and second units are, let alone what the reference shows. I would agree with Your Honor. And I would like to reserve the balance of my time. Got it. Thank you very much. Ms. Margolis? May it please the Court? With respect to the two response units, if you look at the claim language of Claim 28, what distinguishes the first response unit means from the second response unit means is that each received a different 800 number. The board found, and this can be found in the board rehearing decision on JA 41, about the middle of the first full paragraph, that Calabrese suggests that different 800 numbers are dialed to access either the inquiry of options available and current selections or selection of options for the next year function, i.e., the claimed first and second response unit means. What the board was finding was that the general large VRU has separate parts that receive the different 800 numbers, and that's all that is required by Claim 28. And in fact, as the Court mentioned earlier, there's dependent Claim 25, which specifically says that the two response unit means are incorporated within a single composite unit. And Calabrese itself describes the advanced function VRU as a composite unit. I asked a question that may not have been coherent, but I guess I'm going to ask what I understand to be the same question of you. You just spoke in describing the board's rehearing decision at 41 of how you said the board found that, and I think you used the word parts, that the different 800 numbers access different parts of Calabrese. The board uses the language of function. Does that make a difference here? I guess one way I've understood the argument of the other side is that it really does have to access different parts in the physical sense, not different functions performed by the same part. And if it does require that, then the board didn't find Calabrese shows that. Well, the board also was talking about the different 800 lines, the 24 800 lines that go into, for example, the flexible benefits enrollment application. And so when it's talking about the different lines and receiving the calls over the different lines, that is talking about structure, the different structure that would be between the first response unit means and the second response unit means. So something in the board or in the Calabrese makes clear that at least it contemplates that different lines might be used or always are used for different 800 numbers? Yes. Okay. Let me go through that, please. First, Calabrese discloses on JA 4771 that, this is the last paragraph, it says that in standard VRU applications such as the ones we are running currently, we are setting up a unique range of numbers for a given application. And it goes on to say so that we know we are dealing with a call that is for claim information, for example. So there it is showing multiple numbers going to one application. Calabrese also discloses, and also at JA 4768, which I mentioned earlier, it shows, for example, the 24 800 lines. So it shows the capacity to receive the multiple 800 numbers. 4768, you said? Yes. Do we know that those are different 800 numbers? As opposed to 24 lines that would carry the same number? Yes. So let me show two different ways that you know that. First, you know that it says there is a disclosure here of using a unique range of numbers, range of numbers, so more than one number. Secondly, what the board, the analysis the board did was, in addition to seeing the capacity for the 24 800 lines, also back at JA 4771, it is discussing the different 800 numbers, one for claim status, one for dependent change. And the full sentence, the prior sentence is talking about having a larger, more general VRU application where there may be a wider range of functions. So the board is seeing here that you can have more than one function and different 800 numbers there. Then what the board did was find that this suggests that different 800 numbers are going to the different functions of the Flexible Benefits Enrollment application. So the board was finding that these different functions of dependent change and claim status are analogous to the two different functions mentioned on 4768 for the Flexible Benefits Enrollment application, one of the functions being inquiry of options available and current selection and the other being selection of options for the next year. So that was the analysis that the board did to find that Calabrese teaches or suggests that different 800 numbers are used to access the same application, the Flexible Benefits Enrollment application.  Calabrese, here also on page J84768, is talking about that there's a disclosure of multiple 800 lines going to the VRU. And the VRU then receives, has different parts of the VRU that are receiving the different calls, the different 800 numbers I should say. And that is the finding that the board made, that the VRUs, that the first and second response unit meetings are met by two different 800 numbers being received. And the structure there is... But it seems to me that the board is just jumping over the question and just saying, well, there are different VRUs because different 800 numbers go to different places. But I'm not sure that follows. The board was also taking into consideration that the claim, the only distinction that the independent claim makes between the two response unit meetings are simply receiving the call, the different 800 numbers. That's all that is distinguishing the two. And then there's the dependent claim 35 that says they can be in one single composite unit. And if you look at the figure 2 from, figure 1 from the 120 patent, when we're talking about a single composite unit that's taking the 800 calls, it's just like Calabrese. All you're seeing is this one unit with the different 800, different lines coming into it. And so that was the analysis that the board did. This is very different from the Beckton case that Katz cites in its brief. So you're saying, are you saying, that when the claim calls for first response unit and second response unit, that doesn't necessarily mean different pieces of structure. It could be the same piece of structure that simply electronically responds to different 800 numbers and routes them in different ways. There is different pieces of this. There's overlapping circuitry that are common in the composite unit, and then there are separate ones that are receiving the different 800 numbers when they first come in. And that is what is recited here, which is the simple difference is one is receiving one 800 number and the other is receiving the other 800 number. There's other claim elements that are dealing with voice generator means and the qualification means. Those are dealing with other aspects of processing. These means elements are only about receiving calls. So it is or is not separate structure. You're saying it is separate structure. It can be overlapping, but it's separate. They can share circuitry, which I guess is the overlapping, as long as they are in one composite unit. But there is the aspect that would be separate is the receiving of the two different 800 numbers. And I will point out that, again, in the 120 patent, the question that you asked the Council of what would be the purpose of having multiple 800 numbers, that is not talked about in the specification. The 120 patent is about something. The focus of the 120 patent is about making sure that people don't take advantage of a contest by calling in more than once. All we have is this single composite unit with lines going into the 800 ARU, which looks just like the Calabrese VRU. If the Court has any questions about the application of formats, I am here to answer that, but I don't believe the Council got into that. And if the Court has no other questions, I will take my seat. So I thought I heard Council suggest that the Board indicated that there were line cards that might be separate. There is no discussion of any line cards in Calabrese whatsoever. There is no discussion about how different 800 numbers might be received physically. It is very much kept at a very high level. I would also like to just point out that Calabrese really is dealing with two scenarios, the existing VRU scenario and what it might like to add to VRUs going forward. And I think where we get hung up is the fact that there are computer programs that will operate these VRUs, but if we get lost in the PTO argument that there might be some big application run by a computer program for which you could get to different individual functions within that computer program by dialing different 800 numbers, that is not getting at the same format. That is getting at different formats because each of those 800 numbers drives a different call processing flow implemented by a computer program. And we have to just be careful that we are not missing the differences between the call processing flows that would arise from trying to go after, let's say, the dependent change or the claim status. The last point would be on the structural piece. Consistently throughout the specification, the description of the system has indicated that there are different structural elements, including the ARUs, the audio response units, and those units were deemed to have structure. There is no suggestion that one would combine the first and the second physical response units into one unitary response unit, which is all that Calabrese shows. Thank you very much. These matters will be taken under submission.